**MUSIFILM, B.V., Plaintiff,**

v.

**Myles S. SPECTOR and Helen T. Haskell, doing business as No Moss Company and Dragon Aire, Ltd., a subsidiary of Seaboard American Corporation, Defendants.**

No. 74 Civ. 4530 (CHT).

United States District Court,
S.D. New York.

July 29, 1983.

---

Parcher & Herbert, P.C., New York City, for plaintiff; L. Peter Parcher, Stewart L. Levy, New York City, of counsel.

Mandelbaum, Targan & Mandelbaum, West Orange, N.J., for defendants; Peter Lushing, West Orange, N.J., of counsel.

## OPINION

TENNEY, District Judge.

This action was terminated by a Stipulation and Order of Dismissal entered on February 14, 1975. The defendants, Myles S. Spector and Helen T. Haskell, doing business as No Moss Co. ("No Moss") and Dragon Aire, Ltd. ("Dragon Aire") now move for a declaratory judgment interpreting the rights of the parties under their settlement agreement. For the reasons discussed below, defendants' motion is denied.

*Background*

Musifilm, B.V. ("Musifilm") commenced this action on October 16, 1974 to recover from defendants money owed to it under a contract of sale. Pursuant to the contract, defendants had acquired from Musifilm all distribution rights in the movie "Ladies and Gentlemen: The Rolling Stones" ("the Picture"). This action never went to trial, however, because the parties reached a settlement. Under their agreement, defendants conveyed back to plaintiff certain of

the distribution rights to the Picture. In particular, defendants conveyed back to plaintiff

3.1.1 All of their right, title and interest to distribute the Picture theatrically, non-theatrically, and by any and all other means and/or devices, now known or hereafter discovered, in all of the world, except for the United States, its territories and possessions and Canada, and all of their right, title, and interest in and to incidental gross recepts [sic] arising therefrom;

3.1.2 All of their right, title and interest to distribute the Picture on television throughout the world, including the United States, its territories and possessions and Canada.

Agreement between Musifilm, No Moss and Dragon Aire dated November 30, 1974 ("the Agreement") (Exhibit B to Defendants' Notice of Motion filed April 11, 1983) at 2. In exchange, Musifilm cancelled defendants' debt. The parties subsequently submitted a Stipulation of Dismissal, which was "So Ordered" by the Court and filed on February 14, 1975.

Now, more than eight years later, defendants move for "an order enforcing the settlement agreement." They do not, however, charge plaintiff with any violation of the Agreement. What defendants want is a determination of the parties' rights under the Agreement.

The dispute centers around ¶ 3.1.2 of the Agreement, in which defendants granted back to Musifilm "their right to distribute the Picture on television." Defendants want to sell the cable/pay television rights to the Picture, and Musifilm has threatened legal action if they do so, claiming that the cable/pay television distribution rights belong to it rather than to the defendants, pursuant to ¶ 3.1.2 of the Agreement. Therefore, defendants seek a declaratory

judgment from this Court, urging the Court to find that ¶ 3.1.2 was intended to reconvey only conventional television rights, and not cable/pay television rights, which they claim were commercially nonexistent at the time they entered the Agreement.

*Discussion*

Characterizing their request as one "for an order enforcing the settlement agreement incorporated into the stipulation of dismissal ordered by the Court," defendants attempt to use this action, terminated more than eight years ago, as a vehicle for obtaining a declaratory judgment in their current contract dispute.

■ The threshold question is whether this Court has subject matter jurisdiction over the dispute. Defendants contend that it does, citing *Meetings & Expositions, Inc. v. Tandy Corp.,* 490 F.2d 714 (2d Cir.1974). In *Tandy,* the court of appeals stated that "the district court had not only the power but the duty to enforce a settlement agreement which it had approved." *Id.* at 717. In *Tandy,* however, plaintiff sought to enforce by contempt proceedings an "Agreement and Stipulation of Settlement" that had been approved by the district court and "So Ordered" at the foot of the agreement. *Id.* at 715, 716 n. 1. In the instant case, the Agreement was never reviewed or approved by the Court. It was never made part of the record in this case, and was not ordered by the Court.[1]

■ The circuits are split on the question whether a district court has the power to enforce a settlement agreement that was not approved by the court or made part of its order of dismissal. *Compare Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371–72 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), *with Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299, 1302–03 (4th Cir.),

1. The Stipulation and Order of Dismissal, filed February 14, 1975, provided:

It is hereby stipulated and agreed by and between the attorneys for plaintiff and the attorneys for defendants pursuant to the settlement agreement of even date between said parties, that subject to the approval of the

Court the within action shall be and the same hereby is dismissed with prejudice and without costs.

Contrary to defendants' contention, the mere mention of an agreement in the Stipulation did not make the Agreement itself part of the Court's order.

*cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). In *Aro Corp.,* the Sixth Circuit concluded that the district court does have the power to enforce such an agreement. However, in *Fairfax* the Fourth Circuit concluded that "the district court is *not* so empowered unless the agreement had been approved and incorporated into an order of the court, or at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction." *Fairfax Countywide Citizens Ass'n, supra,* 571 F.2d at 1303 (footnote omitted). *Accord Backers v. Bit-She,* 549 F.Supp. 388 (N.D.Cal.1982); *see also Denali Seafoods, Inc. v. Western Pioneer, Inc.,* 92 F.R.D. 763 (W.D.Wash.1981). This Court agrees with the *Fairfax* court's conclusion. Once an action has been terminated, a district court has no power to enforce a settlement which it neither ordered nor approved, absent an independent ground of jurisdiction.

As the court in *Fairfax* stated:

A district court is a court of limited jurisdiction "[a]nd the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction till the contrary appears," *Turner v. President, Directors and Company of the Bank of North America,* 4 Dall. 7, 10, 1 L.Ed. 718, 719 (1799). The burden of establishing jurisdiction is on the party claiming it. *McNutt v. General Motors Accept. Corp.,* 298 U.S. 178, 182–83, 56 S.Ct. 780 [782], 80 L.Ed. 1135 (1936).

571 F.2d at 1303. Defendants, who claim jurisdiction, have not alleged any independent ground for jurisdiction. Originally, jurisdiction in this action was grounded on diversity of citizenship, 28 U.S.C. § 1332. Assuming arguendo that the parties are still diverse and the contract rights in question here exceed $10,000, there would be no jurisdictional obstacle to enforcement of the settlement agreement even under the more restrictive approach of the *Fairfax* court. *See Fairfax Countywide Citizens Ass'n v. County of Fairfax, supra,* 571 F.2d at 1303

n. 8; *Lee v. Hunt,* 483 F.Supp. 826, 831 (W.D.La.1979), *aff'd,* 631 F.2d 1171 (5th Cir. 1980), *cert. denied,* 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981).

■ Even if jurisdiction is proper, the Court nevertheless rejects defendants' argument that it has a *duty* to decide their dispute in connection with this action—terminated eight years ago—simply because the dispute arises from the parties' settlement agreement. The Court did not review that agreement or order compliance with its terms. Accordingly, the Court concludes that the defendants must institute a separate proceeding in this court—if they can meet the appropriate jurisdictional requirements—or in state court, to obtain the relief they seek.

Courts are typically asked to enforce settlement agreements by motion in a "settled" action in one of two situations. In the first, the action is still pending, and the party seeking enforcement of the settlement agreement asserts the agreement—repudiated by his adversary—to terminate the action. *See, e.g., Autera v. Robinson,* 419 F.2d 1197 (D.C.Cir.1969); *Morris v. Gaspero,* 522 F.Supp. 121 (E.D.Pa.1981); *United States v. Buckner & Moore, Inc.,* 505 F.Supp. 409 (W.D.Okl.1979); *see also Fairfax Countywide Citizens Ass'n v. County of Fairfax, supra,* 571 F.2d at 1304 n. 12. In that situation, a court will enforce the settlement agreement if it determines that the agreement is a valid contract. There, the enforcement proceeding is logically held in the context of the pending action. If the court determines that the agreement is valid, it will order the action dismissed. If, on the other hand, the court finds the agreement invalid, the action will remain open on its docket.

In the second situation in which enforcement of settlement agreements is frequently sought, the action has already been dismissed, subsequent to the parties' settlement of their dispute. One party, by motion pursuant to Federal Rule of Civil Procedure ("Rule") 60(b), seeks to vacate the dismissal order and reopen the original ac-

tion, either because the settlement was not a valid contract or because it has been repudiated. *See, e.g., Dankese v. Defense Logistics Agency,* 693 F.2d 13 (1st Cir.1982); *Harman v. Pauley,* 678 F.2d 479 (4th Cir. 1982); *Fairfax Countywide Citizens Ass'n v. County of Fairfax, supra; Strama v. Peterson,* 96 F.R.D. 198 (N.D.Ill.1982). Whether a court will enforce a settlement agreement on a Rule 60(b) motion depends on the circumstances of the particular case. The terminated action is the logical context for resolution of the settlement dispute when the moving party seeks to reinstate, and litigate, that action.[2]

■ However, none of the considerations that make the original action the logical context for a proceeding in connection with the enforcement of a settlement agreement apply in this case. This action was terminated eight years ago. Neither party suggests that the Agreement was not a valid contract or that the action was not properly dismissed. Defendants do not seek to reopen that action; instead, they have brought this motion to obtain a declaratory judgment in an entirely different dispute.[3] Plaintiff insists on its right to discovery, to

cross-examine defendants' witnesses, and to present lay and expert witnesses at a trial. The circumstances clearly indicate the appropriateness of a separate action.[4] *See Dankese v. Defense Logistics Agency, supra,* 693 F.2d at 16 (affirming district court's denial of Rule 60(b) motion "without prejudice to the initiation of a separate action to enforce the settlement agreement"); *Harman v. Pauley, supra* (affirming district court's denial of a Rule 60(b)(6) motion where a separate action to enforce the settlement was more appropriate); *Strama v. Peterson, supra* (denying Rule 60(b)(6) motion where separate action was preferable means of obtaining the relief sought).

■ Moreover, the policy considerations that support enforcement of settlement agreements do not dictate a contrary result. It is unlikely that a party's willingness to enter into a settlement agreement will be adversely affected by the knowledge that, if the agreement is not in the record and ordered by the court, the settled action will not provide a forum for resolution of all subsequent disputes involving that agreement.[5] Nor will any notions of judicial

2. Where the repudiated settlement was actually approved by the court and made part of its order, parties may also attempt to have the settlement agreement enforced through a contempt motion. *But see Meetings & Expositions, Inc. v. Tandy Corp., supra,* 490 F.2d at 717. Of course, whether enforcement is sought in that manner or by a Rule 60(b)(6) motion, different considerations apply when the settlement itself has been ordered by the court. *Id.* Both of the cases cited by the defendants in support of their jurisdictional argument, *Tandy* and *Sanchez v. Maher,* 560 F.2d 1105 (2d Cir. 1977), involved court-ordered settlements. This case does not.

3. Defendants have not moved pursuant to Rule 60(b) to vacate the dismissal order and reopen this action on the basis of plaintiff's anticipated breach of its obligations under the Agreement; in fact, they have not specified the procedural grounds for their motion. Nevertheless, even if this motion were construed as a Rule 60(b) motion, defendants are not automatically entitled to the relief they seek in this action. Rule 60(b)(6) motions are addressed to the Court's discretion, *Dankese v. Defense Logistics Agency, supra,* 693 F.2d at 15; 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.19 (2d ed. 1982), and the Court is persuaded that, in this

case, defendants should seek relief in a separate action. Moreover, Rule 60(b) motions must be made "within a reasonable time," and this motion was not.

4. The Court notes that, despite defendants' arguments to the contrary, summary enforcement of the Agreement may not be proper. *See Autera v. Robinson, supra,* 419 F.2d at 1200, 1203; *see also Meetings & Expositions, Inc. v. Tandy Corp., supra,* 490 F.2d at 717. Where the parties' intent is not apparent from the face of the contract, a court must consider extrinsic evidence to interpret the contract. *See le Cordon Bleu, S.A. v. BPC Publishing, Ltd.,* 451 F.Supp. 63, 69 (S.D.N.Y.1978). To the extent that the extrinsic evidence raises issues of fact for determination, the parties are entitled to an evidentiary hearing. *Autera v. Robinson, supra,* 419 F.2d at 1202–03. This reinforces the Court's conclusion that defendants should seek relief through a separate action.

5. Both parties have cited New York law in support of their jurisdictional arguments. Since this action was terminated by an express stipulation of dismissal executed by both parties, it is clear that, under New York law, defendants could obtain the relief they seek

economy be served by deciding the dispute in the context of this action, since the present dispute is separate and distinct from the dispute underlying the original action.

Accordingly, defendants' motion for an order enforcing the settlement agreement is denied. Defendants must institute a separate action to obtain the relief they seek. The Court takes no position on the merits of their claim.

So ordered.

only in an independent, plenary action. *See Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 56, 396 N.E.2d 1029, 1031, 421 N.Y.S.2d 556, 558–59 (1979); *Yonkers Fur Dressing Co. v. Royal Ins. Co.,* 247 N.Y. 435, 160 N.E. 778 (1928).