Chamberlin v. Social Security          CV-94-202-L    08/28/95 P

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Susan L. Chamberlin

    v.                                    #C-94-202-L

Shirley S. Chater, Commissioner
 of Social Security


**ORDER ON MOTION TO ALTER AND AMEND JUDGMENT AND TO REMAND
FOR FURTHER ADMINISTRATIVE PROCEEDINGS**


On January 11, 1995, this court, in its memorandum order, affirmed the Secretary's decision denying benefits to plaintiff, Susan Chamberlin.  The court reasoned that the Administrative Law Judge (ALJ) had not committed error in finding the plaintiff not disabled.  This court further concluded that the plaintiff, a young woman with an IQ of 75, "had fully and adequately understood her rights."  Chamberlin v. Shalala, No. 94-202-L (D.N.H. filed January 11, 1995).

At the time of the initial administrative hearing the plaintiff appeared pro se before the ALJ, which this court was aware of prior to issuing its memorandum order of January 11, 1995.  However, plaintiff's counsel now points out that plaintiff never informed the ALJ that she had seen a psychologist on August 27, 1992.  The psychologist's evaluation noted her diminished intellectual capacities and the fact that she was "functioning in the borderline level of intellectual ability".  When questioned by the ALJ about any problems in addition to her physical ones, she denied the same.

This court's January 11, 1995 order was appealed to the United States Court of Appeals (<u>Chamberlin v. Chater</u>, 1st Cir. docketed as 95-1159). The issue presented on appeal was plaintiff's lack of legal representation at the administrative level and whether she knowingly and voluntarily waived such representation.

Subsequent to filing the appeal, plaintiff filed another application for SSI benefits. On March 26, 1995, the plaintiff was notified that she was eligible for SSI benefits, with an onset date of January 1, 1995, based upon a primary diagnosis of depression and a secondary diagnosis of mild mental retardation, lumbar strain, and asthma by history.

Pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, plaintiff now seeks to reopen the court's decision of January 11, 1995 and have the case remanded to the Commissioner for further action based upon newly discovered evidence under sentence six of 42 U.S.C. § 405(g). Succinctly, plaintiff contends that, based on evaluations performed by Dr. James M. Claiborn, evidence of her major depression and borderline personality disorder existed prior to this Court's order of January 11, 1995.

Dr. Claiborn, in September, 1994, gave an evaluation to the State of New Hampshire Department of Health and Human Services, Division of Human Services. Dr. Claiborn stated that "as far as I can tell, claimant has been depressed for years, never adequately treated." He further found plaintiff's mood to be

2

"anxious, hopeless, depressed, focused on physical symptoms, feels overwhelmed by almost everything around people due to anxiety. Dr. Claiborn stated that plaintiff's attention was disrupted and her concentration poor, her fund of information was limited due to her below average IQ, and her daily activities were limited. He noted that plaintiff had a very hard time getting to appointments and dealing with day-to-day demands; considerable difficulty dealing with other people due to temper and suspiciousness; difficulty dealing with stress; and likely to lose temper and act out in a self destructive or explosive way. Dr. Claiborn also indicated that plaintiff has a history of overdosing and suicide attempts.

Based on Dr. Claiborn's report, plaintiff was found eligible for APTD.

Dr. Claiborn, on February 8, 1995 made a subsequent evaluation for Social Security disability purposes. This evaluation invariably led to the conclusion finding plaintiff eligible for SSI effective January 1, 1995. During this subsequent evaluation, Dr. Claiborn found plaintiff's general appearance to be poorly maintained, her behavior to be anxious, and her speech to be rambling with difficulty in focusing her attention. Dr. Claiborn noted that plaintiff was extremely limited in her daily activities and stays home avoiding other people, with few interests. This evaluation was based upon his having seen plaintiff "perhaps five times in the course of a year, where she has cancelled most of her appointments."

3

Although issues decided in this court's January 11, 1995 order are currently pending on appeal, on April 7, 1995 the First Circuit Court of Appeals issued the following order:

> The assented to motion for stay of appellate proceedings while claimant pursues Rule 60 (b) relief in the district court is granted. The parties shall report to this court every sixty days on the status of district court proceedings.

Therefore, appropriately vested with the authority to consider plaintiff's motion, the court notes the apposite parts of Rule 60. Fed. R. Civ. P. 60(b)(2) provides:

> On Motion and upon such terms as are just, the Court may relieve a party or his legal representative from a final judgment, order. . . for the following reasons. . .:
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Motions to reopen judgments pursuant to Fed.R. Civ.P. 60(b) are addressed to the discretion of the district court and will be reversed only when that discretion is abused. <u>Dankese v. Defense Logistics Agency</u>, 693 F.2d 13, 15 (1st Cir. 1982).

As stated in <u>Mumford v. Bowen</u>, 814 F.2d 328, 329-330 (7th Cir. 1986), prerequisites for Rule 60(b)(2) relief are:

1) the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial;

2) it was discovered following trial;

3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

4

4) the evidence is admissible;

5) it is credible;

6) the new evidence is material;

7) it is not merely cumulative or impeaching; and finally,

8) the new evidence is likely to change the outcome.

With respect to the prerequisites numbered 1, 4, 5, 6, and 8, there appears to be lack of controversy in meeting the test. See Id.

In addressing steps 2, 3, and 7, one has to consider the obvious fact that the claimant was not represented by counsel, has a low IQ, and was emotionally distraught and out of her element in appearing pro se before the Administrative Law Judge. In considering these factors, there should be no negative reflection on the ALJ. Succinctly, the ALJ, in some detail, inquired into claimant's understanding of the proceedings and had no inkling of her mental background or adolescent family instability.

The lack of counsel, at the earlier proceedings, has now posed a problem in that there are indications that there may have been a reluctance on the part of the claimant to disclose her past problems because of fear that she might have her daughter taken away by the State.

When plaintiff resumed counseling with Dr. Claiborn in February, 1994 her case had already been denied at the Appeals Council level on December 21, 1993. Notably, her counsel could

5

not allude to this evidence in his appeal before this court.

Some of the emotional evidence was extant prior to trial, other evidence of the same nature was discovered after trial in this court  The nature of her illness, the undeserved stigma associated with mental illness, her reluctance to admit she was ill, concern about losing custody of her daughter together with her mental capacity and alertness are appropriate factors to be considered by this court.

Under 42 U.S.C. § 405(g), remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing.  Evangelista v. Secretary of Health & Human Services, 826 F.2d 136, 139 (1st Cir. 1987).

On the other hand, Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect should be avoided.  Id. at 141.  In order to timely resolve social security appeals, the process should not be bogged down or duly impeded by unfounded requests for remand.  Id.

Defendant's counsel, in a well-reasoned memorandum of law, has stated that the plaintiff's current Affective Disorder, even if present during the time period before the ALJ, was clearly not at a disabling level of severity.

This is a close call.  Nevertheless, in considering all the factors present in this case the court concludes that, in the interests of justice, the motion to remand shall be granted.  In

6

addition, while not a cogent reason, a remand will obviate the appeal. For the sake of providing to the plaintiff a full and fair hearing and to have pertinent and potentially crucial evidence properly considered, the case is remanded, pursuant to Rule 60(b)(2) and sentence six of 42 U.S.C. § 405(g), in order for the Commissioner to determine whether the plaintiff's current Affective Disorder existed prior to January 1, 1995. As part of the determination, the Commissioner shall, within the context of a further hearing, consider the newly discovered psychological evidence. If such a condition did exist, the Commissioner must also determine whether the limitation constituted a disability within the context of the law.

August 28, 1995

_____
Martin F. Loughlin
Senior Judge

David Broderick, AUSA
Raymond J. Kelly, Esq.

7